UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**TURBINE GENERATOR MAINTENANCE, INC.**,

    Plaintiff,

v.

Case No. 2:15-cv-00478-SPC-MRM

**FLAMBEAU RIVER PAPERS, LLC**,

    Defendant.

**DEFENDANT'S ANSWER RAISING PERSONAL JURISDICTION AND VENUE DEFENSES, AND, IN THE ALTERNATIVE, ANSWER TO SPECIFIC ALLEGATIONS AND AFFIRMATIVE DEFENSES TO COMPLAINT, AND, IN THE ALTERNATIVE, COUNTERCLAIMS AND JURY DEMAND**

NOW COMES Defendant Flambeau River Papers, LLC ("Flambeau"), and for its Answer Raising Personal Jurisdiction and Venue Defenses and, In the Alternative, Answer to Specific Allegations and Affirmative Defenses to Complaint (Doc. 2) of Plaintiff Turbine Generator Maintenance, Inc. ("TGM"), admits, denies, and alleges as follows:

## ANSWER RAISING PERSONAL JURISDICTION AND VENUE DEFENSES

### FIRST DEFENSE
### LACK OF PERSONAL JURISDICTION

This Court does not have personal jurisdiction over Flambeau in this case. Flambeau does not do business in Florida, has no employees in Florida, and has entered into no binding agreement for jurisdiction in Florida. Flambeau does not consent to the jurisdiction of this Court by the filing of the below Answer and Affirmative Defenses and, in the alternative, Counterclaims. By contrast, TGM does business in the state of Wisconsin, has a registered agent in Wisconsin, performed the services that are the subject of TGM's Complaint in Wisconsin, and is subject to the personal jurisdiction of

Wisconsin courts. Accordingly, there is a Wisconsin action pending relating to this dispute between these parties, which has been filed in the Circuit Court for Price County, Wisconsin, bearing the case number 15-CV-53.

**SECOND DEFENSE**
**IMPROPER VENUE**

Venue is not proper before this Court. Flambeau does not reside in this judicial district, a substantial part of the alleged events or omissions giving rise to TGM's claims did not occur in this judicial district, and Flambeau is not subject to personal jurisdiction in this judicial district. Moreover, Flambeau has entered into no binding agreement for venue in Florida. Flambeau does not consent to venue before this Court by the filing of the below Answer and Affirmative Defenses and, in the alternative, Counterclaims.

## IN THE ALTERNATIVE, ANSWER TO SPECIFIC ALLEGATIONS

Solely in the alternative to Flambeau's defense for lack of personal jurisdiction and improper venue, in the unlikely event that personal jurisdiction and venue is found to be proper before this Court, and in further defense to TGM's Complaint, Flambeau responds to the specific allegations of the Complaint as follows:

1. Flambeau denies the allegations of paragraph 1 of the Complaint, and affirmatively states that paragraph 1 is a general characterization of the nature of the action, not a factual allegation, to which no response is technically required.

2. Flambeau lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and, therefore, denies same.

3. Flambeau admits the allegations of paragraph 3 of the Complaint.

4. Flambeau denies the allegations of paragraph 4 of the Complaint, except that it admits making certain payments to TGM. Flambeau further denies that such

payments are grounds for personal jurisdiction or venue before this Court and reasserts and incorporates by reference its defenses for lack of personal jurisdiction and improper venue.

5. Flambeau lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and, therefore, denies same.

6. Flambeau denies the allegations of paragraph 6 of the Complaint, except that it admits it produces paper products.

7. Flambeau denies the allegations of paragraph 7 of the Complaint, except that it admits certain conversations occurred between employees of the parties in 2014 related to the potential performance of certain work on a steam turbine generator in Wisconsin.

8. Flambeau denies the allegations of paragraph 8 of the Complaint, except that it admits certain conversations occurred between employees of the parties in 2014 related to the potential performance of certain work on a steam turbine generator in Wisconsin.

9. Flambeau denies the allegations of paragraph 9 of the Complaint, except that it admits TGM made representations and prescribed solutions for Flambeau based upon an inspection of the steam turbine generator in Wisconsin. Flambeau relied upon such representations.

10. Flambeau denies the allegations of paragraph 10 of the Complaint.

11. Flambeau denies the allegations of paragraph 11 of the Complaint, except that it admits certain documents were exchanged between employees of the parties in

2014 related to the potential performance of certain work on a steam turbine generator in Wisconsin.

12. Flambeau denies the allegations of paragraph 12 of the Complaint, except that it admits certain documents were exchanged between employees of the parties in 2014 related to the potential performance of certain work on a steam turbine generator in Wisconsin.

13. Flambeau denies the allegations of paragraph 13 of the Complaint.

14. Flambeau denies the allegations of paragraph 14 of the Complaint, except that it admits TGM performed certain work at the paper mill Flambeau operates on or around October 24, 2014 in Wisconsin.

15. Flambeau denies the allegations of paragraph 15 of the Complaint.

16. Flambeau denies the allegations of paragraph 16 of the Complaint, except that it admits paying TGM $336,512.00, as to which it is entitled to a refund and other damages.

17. Flambeau denies the allegations of paragraph 17 of the Complaint.

18. Flambeau lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and, therefore, denies same.

19. Flambeau lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and, therefore, denies same.

20. Flambeau denies the allegations of paragraph 20 of the Complaint, and affirmatively states that paragraph 20 is a general characterization of the nature of the action, not a factual allegation, to which no response is technically required.

21. Flambeau restates and incorporates by reference its responses to paragraphs 1-19 of the Complaint as its response to paragraph 21 of the Complaint.

22. Flambeau denies the allegations of paragraph 22 of the Complaint, but affirmatively states that paragraph 22 is a legal conclusion, not a factual allegation, to which no response is technically required.

23. Flambeau denies the allegations of paragraph 23 of the Complaint.

24. Flambeau denies the allegations of paragraph 24 of the Complaint.

25. Flambeau denies the allegations of paragraph 25 of the Complaint, and affirmatively states that paragraph 25 is a general characterization of the nature of the action, not a factual allegation, to which no response is technically required.

26. Flambeau restates and incorporates by reference its responses to paragraphs 1-19 of the Complaint as its response to paragraph 26 of the Complaint.

27. Flambeau denies the allegations of paragraph 27 of the Complaint, but affirmatively states that paragraph 27 is a legal conclusion, not a factual allegation, to which no response is technically required.

28. Flambeau denies the allegations of paragraph 27 of the Complaint, but affirmatively states that paragraph 28 is a legal conclusion, not a factual allegation, to which no response is technically required.

29. Flambeau denies the allegations of paragraph 29 of the Complaint.

30. Flambeau denies the allegations of paragraph 30 of the Complaint.

31. Flambeau denies the allegations of paragraph 31 of the Complaint, but affirmatively states that paragraph 31 is a legal conclusion, not a factual allegation, to which no response is technically required.

32. Flambeau denies the allegations of paragraph 32 of the Complaint, and affirmatively states that paragraph 32 is a general characterization of the nature of the action, not a factual allegation, to which no response is technically required.

33. Flambeau restates and incorporates by reference its responses to paragraphs 1-19 of the Complaint as its response to paragraph 33 of the Complaint.

34. Flambeau denies the allegations of paragraph 34 of the Complaint, but affirmatively states that paragraph 34 is a legal conclusion, not a factual allegation, to which no response is technically required.

35. Flambeau denies the allegations of paragraph 35 of the Complaint, but affirmatively states that paragraph 35 is a legal conclusion, not a factual allegation, to which no response is technically required.

36. Flambeau denies the allegations of paragraph 36 of the Complaint, but affirmatively states that paragraph 36 is a legal conclusion, not a factual allegation, to which no response is technically required.

37. Flambeau denies the allegations of paragraph 37 of the Complaint, but affirmatively states that paragraph 37 is a legal conclusion, not a factual allegation, to which no response is technically required.

38. Flambeau restates and incorporates by reference its responses to paragraphs 1-19 of the Complaint as its response to paragraph 38 of the Complaint.

39. Flambeau denies the allegations of paragraph 39 of the Complaint, and affirmatively states that paragraph 39 is a general characterization of the nature of the action, not a factual allegation, to which no response is technically required.

40. Flambeau denies the allegations of paragraph 40 of the Complaint.

41. Flambeau denies the allegations of paragraph 41 of the Complaint.

42. Flambeau denies the allegations of paragraph 42 of the Complaint.

43. Answering TGM's various Wherefore clauses, Flambeau denies that TGM is entitled to any of the relief it seeks from Flambeau.

44. Flambeau asserts that all allegations in the Complaint that are not expressly admitted in this Answer are denied.

## IN THE ALTERNATIVE, ADDITIONAL AFFIRMATIVE DEFENSES

### THIRD DEFENSE
### LACK OF AUTHORITY

The alleged actions attributed to Flambeau upon which TGM's claims rely may have been undertaken without the authority of Flambeau to do so.

### FOURTH DEFENSE
### ESTOPPEL

TGM's claims are barred by the doctrines of estoppel.

### FIFTH DEFENSE
### LACHES/WAIVER/UNCLEAN HANDS

TGM's claims are barred by the doctrines of laches, waiver, and/or unclean hands.

### SIXTH DEFENSE
### SETOFF

In the event that Flambeau is found to be liable or otherwise suffers economic harm or monetary loss, Flambeau is entitled to a setoff from TGM as a result of TGM's own liability.

### SEVENTH DEFENSE
### RESERVATION OF RIGHTS

Flambeau reserves all rights under the law to assert in the future additional affirmative defenses to the Complaint as they become known to Flambeau during the course of the litigation.

WHEREFORE, Flambeau seeks the following relief:

A. That the action be dismissed because of lack of personal jurisdiction and improper venue.

B. That Flambeau be permitted to engage in written discovery and depositions with respect to its defenses of lack of personal jurisdiction and improper venue.

C. Solely in the alternative to Flambeau's defenses for lack of personal jurisdiction and improper venue, and in the unlikely event that personal jurisdiction and venue are found to be proper before this Court, that the Complaint be dismissed on the merits and with prejudice.

D. Awarding Flambeau its attorneys' fees and costs as allowed by law.

E. Granting such further relief as may be appropriate.

**IN THE UNLIKELY EVENT THAT FLAMBEAU'S DEFENSES OF LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE ARE DENIED, IN THE ALTERNATIVE, FLAMBEAU'S COUNTERCLAIMS**

Solely in the alternative to Flambeau's defenses for lack of personal jurisdiction and improper venue, in the unlikely event that personal jurisdiction and venue are found to be proper before this Court, and out of an abundance of caution to avoid waiver in light of the compulsory counterclaims rules set forth in Fed. R. Civ. P. 13(a), Flambeau alleges and shows the Court as follows as and for its Counterclaims against TGM:

**PARTIES**

1.      The names and addresses of the parties are set forth in Flambeau's Notice of Removal (Doc. 1) filed August 10, 2015, and are re-alleged and incorporated by reference herein.

## WISCONSIN ACTION

2.      TGM does business in the state of Wisconsin and is subject to personal jurisdiction in Wisconsin courts. TGM also has a registered agent for service of process in Wisconsin at Registered Agent Solutions, Inc., 901 S. Whitney Way, Madison, Wisconsin 53711.

3.      TGM's claims against Flambeau arise out of alleged acts or omissions in Wisconsin, and the paper mill housing the turbine generator that is the subject of this action is located in Wisconsin.

4.      TGM engaged in a series of wrongful acts in Wisconsin, including but not limited to fraud in the inducement and/or breach of contract.

5.      Accordingly, on August 14, 2015, Flambeau filed the case of *Flambeau River Papers, LLC v. Turbine Generator Maintenance, Inc.*, Case No. 15-CV-53, in the Circuit Court for Price County, Wisconsin (the "Wisconsin Action").

6.      On August 17, 2015, at 10:30 a.m., Flambeau served TGM with the Summons and Complaint in the Wisconsin Action by serving TGM's registered agent in Wisconsin. Also on August 17, 2015 TGM was served with Plaintiff's First Request for Production of Documents to Defendant and a Notice of Depositions in the Wisconsin Action.

7.      Accordingly, the Wisconsin Action should proceed to trial first, which will resolve the issues raised in these alternative Counterclaims.

## FACTUAL ALLEGATIONS

8. Flambeau operates a paper mill on the Flambeau River at 200 1st Avenue N, Park Falls, Price County, Wisconsin. The Park Falls, Wisconsin mill processes wood harvested with certified sustainable forestry practices, and its operation is chlorine-free.

9. TGM is a turbine generator maintenance company, providing services related to the inspection, assessment, and repair of turbines, including in Wisconsin.

10. In order to stay competitive and minimize its environmental impact, Flambeau has implemented measures to more efficiently generate electricity and avoid wasting energy. Flambeau's Park Falls, Wisconsin mill generates its own electricity on site by burning a variety of fuel sources, including biomass. Flambeau then captures the waste heat produced by those processes, turns it into high-pressure steam, and uses it to generate even more electricity and to make paper.

11. Flambeau's process to capture and utilize waste heat ultimately produces approximately 5.5 megawatts of electricity that Flambeau would otherwise need to purchase from the electric utility grid at a cost of over $3,000 per day.

12. In 2014, as part of its initiative to make the Park Falls, Wisconsin mill more energy efficient, Flambeau was in need of maintenance on a steam turbine generator located in the mill. Flambeau therefore looked for vendors who could perform work to include the inspection, assessment, and repair of the turbine generator.

13. TGM inspected the steam turbine generator in Wisconsin, prescribed solutions for Flambeau based upon its inspection, and provided a price certain for the prescribed work. Flambeau countered TGM's suggestions with additional conditions, which TGM accepted.

14. The turbine generator has a vibration monitoring system, which continuously checks the vibration of the turbine and trips the turbine offline if the vibration levels get too high. However, TGM did not send a controls engineer or other staff competent to assess the vibration monitoring system when it performed its inspection in Wisconsin. Accordingly, the inspection did not produce any recommendations to make any changes to the monitoring system.

15. Only later, once TGM had already been awarded and performed its work and the turbine was nearly ready to get back online, did TGM discover an apparent problem with the vibration monitoring system on the turbine. At that point, TGM pressured Flambeau to expend additional money to pay for a TGM controls engineer to come to the site in Wisconsin and to install an entirely new vibration detection system, stating that it would not warranty or guarantee the work if Flambeau did not expend such sums. Flambeau also needed to bring in additional outside assistance from L&S Electric out of Wausau, Wisconsin. The start-up of the turbine was significantly delayed while the vibration control problem was resolved, depriving Flambeau of use of the turbine for an additional two months beyond what was expected and resulting in damages for loss of use amounting to thousands of dollars per day.

16. Water loss is a significant concern in the operation of steam turbine generators, as lost water—in the form of steam—cannot be converted to electricity. TGM guaranteed that its work would reduce Flambeau's water loss in its steam turbine generator from 11 gpm (gallons per minute) to less than 4 gpm. TGM has not achieved this figure. Currently, Flambeau is losing water at a rate of greater than 11 gpm.

17. In addition, Flambeau has been experiencing problems with the mechanical integrity of the turbine since TGM performed its work. Specifically, water is mixing with oil in the turbine. Flambeau has therefore been forced to purchase additional equipment and to expend time and money to remove water on a daily basis.

18. All conditions precedent to Flambeau's claims have occurred, been performed, or been waived, and Flambeau engaged the undersigned counsel and is obligated to pay all attorneys' fees and costs incurred by its counsel.

**FIRST CLAIM**
**(Intentional Misrepresentation/Fraud In The Inducement)**

19. The allegations set forth in paragraph 1 through 18 are re-alleged and incorporated by reference.

20. TGM intentionally deceived Flambeau by representing that a particular scope of work would be required based upon its inspection, when, in reality, TGM had not performed an adequate inspection in Wisconsin and additional work on the vibration monitoring system would actually be required once TGM was awarded the work.

21. TGM's representations concerning the scope of required work were false.

22. Flambeau relied upon the representations of TGM, awarded the project to TGM when it otherwise may not have done so, and made commitments to the project based upon a project timeline that ultimately could not be met.

23. As a result of TGM's fraud in the inducement of the contract, Flambeau is entitled to rescission of the contract and incidental and consequential damages.

24. Alternatively, since Flambeau has been harmed by TGM's intentional misrepresentation, Flambeau is entitled to recover money damages for the additional expenses it incurred and the down time for its steam turbine generator that it could have

12

avoided had TGM performed an adequate inspection in Wisconsin and notified it of the problems with the vibration monitoring system from the outset.

## SECOND CLAIM
### (Breach of Contract)

25. The allegations set forth in paragraph 1 through 24 are re-alleged and incorporated herein by reference.

26. Flambeau and TGM have executed a valid and binding contract.

27. TGM breached the contract by, among other things, failing to perform an adequate inspection in Wisconsin, failing to perform satisfactory repair work, failing to reach its guaranteed performance level, and causing excessive delay.

28. Accordingly, Flambeau is entitled to money judgment for damages against TGM for all amounts paid under the contract, along with other past and future actual, incidental, and consequential damages, which total several million dollars, plus pre-judgment interest.

## THIRD CLAIM
### (Breach of the Covenant of Good Faith and Fair Dealing)

29. The allegations set forth in paragraph 1 through 28 are re-alleged and incorporated herein by reference.

30. The contract between Flambeau and TGM contains an implied covenant of good faith and fair dealing.

31. The acts of TGM—in failing to perform an adequate inspection of the vibration monitoring system in Wisconsin before submitting prescribed solutions to Flambeau, and then compelling Flambeau to expend additional time and money to acquire a new vibration monitoring system once it was awarded the work—constitute a breach of the covenant of good faith and fair dealing.

32. Accordingly, Flambeau is entitled to money judgment for damages against TGM for all amounts paid under the contract, along with other past and future actual, incidental, and consequential damages, plus pre-judgment interest.

## FOURTH CLAIM
### (Unjust Enrichment in the Alternative to Breach of Contract)

33. The allegations set forth in paragraph 1 through 18 are re-alleged and incorporated herein by reference.

34. Flambeau conferred a benefit upon TGM in paying TGM $336,512.00.

35. Acceptance and retention of such benefit without providing Flambeau adequate services in return would be inequitable.

36. Accordingly, Flambeau is entitled to a money judgment for damages against TGM for all amounts paid, along with other past and future actual, incidental, and consequential damages, plus pre-judgment interest.

WHEREFORE, Flambeau demands judgment as follows:

A. Rescission of the contract and incidental and consequential damages;

B. In the alternative and in the event the contract is not rescinded, money damages in an amount to be determined at trial to compensate Flambeau for its past and future consequential damages and for loss of use of its steam turbine generator;

C. Return of money paid to TGM by Flambeau;

D. For an award of Flambeau's costs, expenses and reasonable attorneys' fees incurred in bringing this action; and

E. For such other relief that the Court deems just and equitable.

## JURY DEMAND

Flambeau requests trial by jury on all issues so triable in both the Answer and in the Counterclaim.

Dated this 17th day of August, 2015.

        By: *s/Joshua C. Webb*
            Joshua C. Webb (FBN 51679)
            HILL, WARD & HENDERSON, P.A.
            3700 Bank of America Plaza
            101 East Kennedy Boulevard
            Tampa, FL  33602
            Phone: 813-221-3900
            Fax: 813-221-2900
            joshua.webb@hwhlaw.com
            val@hwhlaw.com

            *Of Counsel:*

            **DEWITT ROSS & STEVENS S.C.**
            Jon P. Axelrod
            Deborah C. Meiners (*pro hac vice* pending)
            Two East Mifflin Street, Suite 600
            Madison, WI  53703-2865
            608-255-8891
            608-252-9243
            jpa@dewittross.com
            dcm@dewittross.com

            *Attorneys for Defendant*
            *Flambeau River Papers, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2015, a true and correct copy of the foregoing document was filed via the CM/ECF system which will provide notice to all counsel of record.

            *s/Joshua C. Webb*
            *Counsel for Defendant*
            *Flambeau River Papers, LLC*