## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

TURBINE GENERATOR MAINTENANCE,
INC., a Florida corporation,

    Plaintiff,

vs.

                                     CASE NO. 2:15-cv-478-SPC-MRM

FLAMBEAU RIVER PAPERS, LLC, a
Wisconsin limited liability company,

    Defendant.

_____

### PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT

COMES NOW the Plaintiff, TURBINE GENERATOR MAINTENANCE, INC., a Florida corporation, by and through its undersigned counsel, and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, move to dismiss the Defendant, FLAMBEAU RIVER PAPERS, LLC's Counterclaims or, alternatively, for more definite statement, and to strike certain allegations, and alleges as follows:

### I.  INTRODUCTION

1.      Plaintiff, Turbine Generator Maintenance, Inc. ("TGM") filed a four-count Complaint against Flambeau River Papers, LLC ("Flambeau") on July 17, 2015 in Lee County Circuit, Florida.

2.      On August 10, 2015, Flambeau filed a Notice of Removal with this Court.

3.      On August 17, 2015, Flambeau filed its Answer, Affirmative Defense, and Counterclaims.

4.      The basis of Flambeau's Counterclaims is an agreement whereby TGM would provide certain services at Flambeau's paper mill in Wisconsin in exchange for which Flambeau would make certain payments to TGM.

5.      However, the Count II fail to allege essential terms of a contract, such as stating whether the contract was oral or written.

6.      In addition, Count I for Intentional Misrepresentation is barred by the Economic Loss Rule as Flambeau acknowledges the existence of a contract, and fails to provide the required specificity under the Federal Rules.

7.      Count III for breach of good Faith and Fair Dealing fails because it merely repeats the same allegations set forth in its contract claim above.

8.      Furthermore, any claim for incidental and consequential damages is limited by Section 14 of the Agreement.

9.      In addition, Flambeau seeks rescission for a tort, which is an improper remedy for such a claim.

10.     Finally, Defendant's request for the recovery of attorney's fees and costs should be stricken as Flambeau fails to identify a contractual or statutory basis for said relief.

11.     For the reasons stated below, TGM now seeks an order dismissing Counts I, II and III of Defendant's Counterclaims or, alternatively, requiring Flambeau to provide a more definite statement in accordance with the arguments set forth.  Furthermore, Plaintiff requests that the Court enter an order striking allegations seeking incidental and consequential damages, rescission, and the recovery of attorney's fees and costs.

## II.  FACTUAL BACKGROUND

12.    Taking the allegations set forth in the Counterclaims as true, the Defendant/Counter-Plaintiff Flambeau states that it operates a paper mill in Wisconsin.  See ¶ 8 of Counterclaims.  Furthermore, Plaintiff/Counter-Defendant TGM provides services related to the inspection, assessment, and repair of turbines. ¶9 of Counterclaims.

13.    In an effort to make its mill more efficient, Flambeau looked for vendors to inspect, assess and repair the turbine generator at its mill.  ¶12 of Counterclaims.

14.    TGM inspected the turbine generator, suggested solutions for Flambeau, and provided a price for the work.  Flambeau countered TGM's suggestions with additional conditions, which TGM accepted. ¶ 13 of Counterclaims.

15.    Flambeau alleges that TGM failed properly staff the inspection and, after the contract had been awarded, TGM pressured Flambeau to expend additional money to pay for a TGM controls engineer to come to the site.  ¶ 14-15 of Counterclaims.

16.    Flambeau claims that TGM's acts and omissions led to unexpected delays and losses amounting to thousands of dollars per day.

17.    Flambeau states that it "has entered into no binding agreement for venue in Florida." See Second Affirmative Defense.

18.    However, Flambeau acknowledges in its Counterclaims that the parties entered into an agreement whereby TGM would perform certain inspection and work on Flambeau's turbine for a price.  See ¶¶ 12-13 of Counterclaims.

19.    In fact, Flambeau seeks rescission of the contract as a remedy.  See ¶ 23 of Counterclaims.

20.     Beyond denying the allegation in the Complaint that the parties executed the written agreement attached as Exhibit A to the Complaint, see ¶ 10 of Answer to Complaint, Flambeau makes no allegations, or attach any documents, that dispute the formation and existence of the contract.

21.     Rather, Flambeau alleges in its Counterclaims that a contract existed and that TGM breached said contract.

22.     Furthermore, Flambeau acknowledges that it negotiated the terms of the agreement with TGM.  See ¶ 13 of Counterclaims.

23.     The Terms & Condition in the revised proposal included a Dispute Resolution which stated, *inter alia*, that:

> The total cumulative liability of either party to this Contract to the other shall be limited to 100% of the Contract Price for non-insurable liability… In no event shall TGM be liable (whether as a result of breach of contract or warranty, tort (including negligence), strict liability or otherwise) for actual, special incidental, exemplary or consequential damages (other than death or bodily injury), including but not limited to loss of profits or revenue, loss of use of equipment or associated equipment, facilities or services, damages suffered by Purchaser as a result of the loss of the use of its power system or production facilities, cost of purchased or replacement power, downtime, costs, fines or penalties imposed by governmental authorities or claims of customers of Purchaser for such damages…

See Exhibit A, Service Agreement, Terms & Conditions, Section 14 – LIMITS OF LIABILITY.

### III. STANDARD OF REVIEW

**A. Motion to Dismiss**

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to

the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007).  In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." Tellabs, Inc., 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts " 'state a claim to relief that is plausible on its face.' " Id. at 1949-50.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.  "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  As the United States Supreme Court explained: "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 1949 (quotation marks and internal citations omitted) (quoting Twombly, 550 U.S. at 557. On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve

lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. Id. at 1950-51.

## B. Motion for More Definite Statement

A party may move for a more definite statement before the filing a responsive pleading if a "pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). Parties moving for a more definite statement are required to indicate the defects in the pleading and what details are sought from the nonmoving party. Id.

While Federal courts disfavor motions for more definite statement in the light of the liberal pleading and discovery requirements, Bazal v. Belford Trucking Co., Inc., 442 F.Supp. 1089, 1101–02 (S.D.Fla.1977), such motions will be granted if "the pleading is so vague or ambiguous that the opposing party cannot respond in good faith or without prejudice to himself." Adelphia Cable Partners, L.P. v. E & A Beepers Corp., 188 F.R.D. 662, 665 (S.D.Fla.1999).

## C. Motion to Strike

The Federal Rules provide that a court may, upon motion by a party or sua sponte, order stricken from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Scelta v. Delicatessen Support Services, Inc., 57 F.Supp.2d 1327, 1347 (M.D. Fla. 1997) (citing Seibel v. Society Lease, Inc., 969 F.Supp. 713, 715 (M.D. Fla. 1997)). When deciding a motion to strike, "a court must accept the truthfulness of well-pleaded facts and 'cannot consider matters  beyond the

pleadings.'" Thompson v. Kindred Nursing Centers East, LLC, 211 F.Supp.2d 1345, 1348 (M.D. Fla. 2002) (citing Carlson Corp./Southeast v. School Bd. of Seminole County Fla., 778 F.Supp. 518 (M.D. Fla. 1991)).

## LEGAL ANALYSIS

### A. Breach of Contract (Counterclaim II)

Under Florida law, the three elements of a breach of contract action are: (1) a valid contact, (2) a material breach, and (3) damages. See, e.g., Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)). To prove a claim for breach of an oral contract, a party must prove the elements of a written contract. See Southtrust Bank v. Export Insurance Services, Inc., 190 F.Supp.2d 1304, 1307 (M.D. Fla. 2002).

In oral contract actions, the complaint must allege the mutual formation of an oral contract, the obligation thereby assumed, consideration, and a breach. International Brokerage & Surplus Lines, Inc. v. Liberty Mutual Ins. Co., 2007 U.S. Dist. LEXIS 5847 (M.D. Fla., Judge Moody) (citing Perry v. Cosgrove, 464 So.2d 664, 667 (Fla. 2d DCA 1985)). If a defendant has no sure knowledge of the exact oral contract which is allegedly the basis for the plaintiff's cause of action, then defendant may file a motion for more definite statement. See Industrial Medicine at 20; see also Rule 12(e) of the Federal Rules of Civil Procedure.

The allegations pled by Flambeau regarding the breach of contract are so vague or ambiguous that TGM cannot reasonably be required to frame a responsive pleading. Count II of Flambeau's Counterclaims fails to allege: (a) whether the contract is a written contract or an oral contract; (b) when the contract was entered into by the parties; (c) and the terms of the contract

or the obligations created by such contract. Without knowing these essential terms, TGM cannot be expected to frame a proper response to this claim.  Accordingly, the Court should dismiss this Count or, alternatively, require that Flambeau amend this Count to provide a more definite statement.

## B. Intentional Misrepresentation/Fraud in The Inducement (Counterclaim I)

### 1.  Economic Loss Rule

The economic loss rule is a "judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indemnity Ins. Co. of North Am. v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). See also Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994). In the context of contractual privity, the economic loss rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." American Aviation, 891 So.2d at 536. One of the recognized exceptions, however, permits a tort action where the tort was committed independently of the contract breach. Id. at 543.

The Florida Supreme Court has explained that "by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action." D&M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. 4th DCA 2003) (quoting Moransais v. Heathman, 744 So. 2d 973, 983 (Fla. 1999)). This means that the economic loss rule "does not bar tort actions based on fraudulent inducement and negligent misrepresentation." Id.

To determine if the economic loss rule applies, the court must ask "if the fraud alleged is in an act of performance or in a term of the bargain." Id. (citing Allen v. Stephan Co., 784 So. 2d

456, 457 (Fla. 4th DCA 2000)). "When the fraud relates to the performance of the contract the economic loss doctrine will limit the parties to their contractual remedies." Id. (citiations omitted).    However, "when the fraud occurs in the connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." Id. at 457-58.

In this case, Flambeau's allegations states that TGM "prescribed solutions for Flambeau based upon its inspection," see ¶13 of Counterclaims, but fails to provide any detail or information as to these "solutions."  Flambeau then states that "once TGM had already been awarded and performed its work and the turbine was nearly ready to get back online, did TGM discover and apparent problem with the vibration monitoring system on the turbine." see ¶15 of Counterclaims. However, this alleged fraud occurred after the contract had been entered into and, therefore, Flambeau could not have relied on this alleged fraud or misrepresentation.  For these reasons, Count I of the Counterclaims is barred by the Economic Loss Rule.

### 2.  Lack of Specificity

To state a claim for negligent misrepresentation and fraud in the inducement under the law of Florida, a plaintiff must allege that the defendant made a material misrepresentation upon which the plaintiff relied. See Yanks v. Barnett, 563 So.2d 776, 777 (Fla. 3rd DCA 1990) ("In order for a jury to find that there was a negligent misrepresentation, the jury must find, inter alia, that the misrepresentation was material  and that the person alleging the misrepresentation relied on the misrepresentation."); Output, Inc. v. Danka Business Systems, Inc., 991 So.2d 941, 944 (Fla. 4th DCA 2008) (fraud in the inducement requires a plaintiff to allege that she suffered injury in justifiable reliance on a misrepresentation of material fact).

Because both of these claims relate to fraud rather than negligence, see, e.g., Ostreyko v. B.C. Morton Organization, Inc., 310 So.2d 316, 318 (Fla. 3rd DCA 1975), the claims must be pled with particularity under Florida law and the Florida Rules of Civil Procedure. See Fla. R. Civ. P. 1.120(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with such particularity as the circumstances may permit."); see also Morgan v. W.R. Grace & Co., 779 So.2d 503, 506 (Fla. 2nd DCA 2000) ("the requirement that fraud be pleaded with specificity also applies to claims for negligent misrepresentation"); In re Mirabilis Ventures, Inc., 2010 U.S. Dist. LEXIS 6502, 2010 WL 415315, at 3 (M.D. Fla. Jan. 27, 2010) ("Under Florida law, negligent misrepresentation is considered tantamount to actual fraud," and therefore "stricter pleading requirements … apply to the negligent misrepresentation claim"). To satisfy the particularity requirement, plaintiff "must specifically identify misrepresentations or omissions of fact, as well as time, place or manner in which they were made." Cedars Healthcare Group, Ltd. v. Mehta, 16 So.3d 914, 917 (Fla. 3rd DCA 2009).

In this case, Flambeau alleges that TGM "prescribed solutions for Flambeau based upon its inspection," see ¶13 of Counterclaims, but fails to provide any detail or information as to these "solutions." Flambeau fails to specifically identify misrepresentations or omissions of fact, as well as time, place or manner in which they were made. See Cedars Healthcare, 16 So.3d at 917. Based on this lack of specificity required under the Federal Rules, TGM requests that this claim be dismissed or, alternatively, that Flambeau be required to amend it to provide a more definite statement.

### III.  Breach of Good Faith and Fair Dealing (Counterclaim III)

A cause of action for a breach of the duty of good faith and fair dealing has been recognized by the courts. Scheck v. Burger King Corp., 798 F. Supp. 692 (S.D. Fla. 1992). In Scheck, the court stated that a "contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken . . . . One such implied term of a contract, recognized by Florida law, is the implied covenant of good faith and fair dealing. . . ." Id. at 693-94.

However,  plaintiff cannot maintain a claim for breach of the implied duty of good faith and fair dealing unless the plaintiff asserts a breach of an express contract provision. Centurion Air Cargo, Inc. v. United Parcel Service Co., 420 F.3d 1146, 1151 (11th Cir. 2005). In order to state a claim for breach of the implied duty of good faith and fair dealing, Plaintiff must assert allegations different than those underlying the accompanying breach of contract claim. Shibata v. Lim, 133 F.Supp.2d 1311, 1319 (M.D. Fla. 2000).

In this case, Flambeau's claim for breach of the covenant of good faith and fair dealing merely repeats the general allegations then makes a conclusory statement that the contract contained an implied covenant.  It merely repeats the same allegations set forth in its contractual claim.  As stated above, for this count to stand, it must assert allegations different than those underlying the accompanying breach of contract claim.  See Shibata, 113 F.Supp.2d at 1319.  For this reason, TGM requests that this Count be dismissed with prejudice.

**D. Motion to Strike**

    **1. Improper Relief Sought**

        **a. Rescission in a Tort Claim**

Rescission is an equitable remedy, the purpose of which "is to undo the original transaction and restore the former status of the parties." Billian v. Mobil Corp., 710 So. 2d 984, 990-91 (Fla. 4th DCA 1998). "Where the remedy is justified because fraud has been established, a court 'may set aside all transactions founded on it.'" Id. at 990 (quoting Willis v. Fowler, 102 Fla. 35, 136 So. 358, 368 (Fla. 1931)). In order to state a claim for rescission under Florida law, a plaintiff must plead six facts:

> (1)[t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) [l]astly, that the moving party has no adequate remedy at law.

Barber v. America's Wholesale Lender, 542 F. App'x 832, 836 (11th Cir. 2013) (citing Billian v. Mobil Corp., 710 So. 2d 984, 991 (Fla. 4th DCA 1998)).

Initially, it should be noted that rescission is not a remedy available for torts, but rather is an equitable remedy. Rubesa v. Bull Run Jumpers, LLC, 2010 U.S. Dist. LEXIS 12631 (So. Dist. Fla., January 26, 2010). Furthermore, Flambeau has failed to allege that it has rescinded the contract and notified TGM of such rescission, that Flambeau has offered to restore benefits it received under the contract, and that Flambeau has no adequate remedy at law. In fact, Flambeau has pled a count for breach of contract which, if successful, would entitle it to the recovery of damages. Therefore, TGM requests that this request for rescission be stricken.

-12-

### b. Incidental and Consequential Damages

Flambeau has pled its Counterclaims in such a manner that it does not expressly acknowledge or deny the existence of a written contract between the parties. The pleadings, taken in their totality, establish that the parties did in fact enter into a written contract.

In fact, Flambeau acknowledges in its Counterclaims that the parties entered into an agreement whereby TGM would perform certain inspection and work on Flambeau's turbine for a price. See ¶¶ 12-13 of Counterclaims. Flambeau even seeks rescission of the contract as a remedy. See ¶ 23 of Counterclaims. Beyond a denial the allegation in the Complaint that the parties executed the written agreement attached as Exhibit A to the Complaint, see ¶ 10 of Answer to Complaint, Flambeau makes no allegations, or attach any documents, that dispute the formation and existence of the contract. The various Purchase Orders and Change Order attached to the Complaint are not rebutted in any way.

Rather, Flambeau alleges in its Counterclaims that a contract existed and that TGM breached said contract. Furthermore, Flambeau acknowledges that it negotiated the terms of the agreement with TGM. See ¶ 13 of Counterclaims. TGM submits that a written contract exist between the parties, which is attached to the Complaint. Furthermore, the Terms & Condition in the revised proposal included a Dispute Resolution which stated, *inter alia*, that:

> The total cumulative liability of either party to this Contract to the other shall be limited to 100% of the Contract Price for non-insurable liability… In no event shall TGM be liable (whether as a result of breach of contract or warranty, tort (including negligence), strict liability or otherwise) for actual, special incidental, exemplary or consequential damages (other than death or bodily injury), including but not limited to loss of profits or revenue, loss of use of equipment or associated equipment, facilities or services, damages suffered by Purchaser as a result of the loss of the use of its power system or production facilities, cost of purchased or replacement power, downtime, costs, fines or penalties imposed by governmental authorities or claims of customers of Purchaser for such damages…

See Exhibit A, Service Agreement, Terms & Conditions, Section 14 – LIMITS OF LIABILITY.

Flambeau agreed to a limitation of its damages when it entered into the contract with TGM.  Therefore, any allegations which seek damages beyond the limits allowed in the contract should be stricken from the Counterclaims.

### 2. Recovery of Attorney's Fees

Under Florida law, a party must bear "its own attorney's fees unless a statute or contract provides otherwise." Price v. Tyler, 890 So. 2d 246, 250 (Fla. 2004) (quoting Pepper's Steel & Alloys, Inc. v. United States, 850 So. 2d 462, 465 (Fla. 2003)).   In its Prayer for Relief, Flambeau seeks the recovery of costs, expenses, and reasonable attorney's fees incurred in the course of litigation.  Florida law, however, provides that the recovery of attorney's fees and costs can be had only if there exists a contractual or statutory basis for such recovery.  Flambeau has failed to identify such a contractual provision or applicable statute.  For these reasons, their request for the recovery of said attorney's fees and costs should be stricken.


### IV.  Unjust Enrichment (Count IV)

Plaintiff respectfully requests that the Court grant an enlargement of time for TGM to file a response to   Flambeau's Counterclaim for Unjust Enrichment until such time as the above arguments are ruled upon.

For the reasons set forth above, the Plaintiff, Turbine Generator Maintenance, Inc., respectfully requests that the Court enter an order dismissing Counts I, II, and III of Defendant's Counterclaims or, alternatively, requiring Flambeau to provide a more definite statement in accordance with the arguments set forth.  Furthermore, Plaintiff requests that the Court enter an

-14-

order striking allegations seeking incidental and consequential damages, rescission, and the

recovery of attorney's fees and costs, and all other relief the Court deems appropriate.


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 8, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to any non-CM/ECF participants.


Dated:  September 8, 2015


                       /s/  MARK C. ANDERSON, ESQ.
                       Florida Bar No. 631922
                       Buchanan Ingersoll & Rooney PC
                       *Attorneys for Plaintiff, Turbine Generator*
                       Post Office Box 1567
                       Fort Myers, Florida  33902
                       (239) 334-7892
                       (239) 334-3240  facsimile
                       mark.anderson@bipc.com