UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TURBINE GENERATOR
MAINTENANCE, INC., a Florida
corporation

   Plaintiff,

v.           Case No:  2:15-cv-478-FtM-38MRM

FLAMBEAU RIVER PAPERS, LLC,

   Defendant.

_____/

### ORDER[1]

  This matter comes before the Court on two motions that Plaintiff Turbine Generator Maintenance, Inc. ("TGM") filed on September 8, 2015 – Motion to Strike Affirmative Defenses or, Alternatively, for More Definitive Statement (Doc. #17), and Motion to Dismiss Counterclaims and to Strike, or in the Alternative, for a More Definitive Statement (Doc. #18).  With the Court's leave, Defendant Flambeau River Papers, LLC ("Flambeau") filed opposition briefs on October 7, 2015.  (Doc. #28; Doc. #29).  TGM's motions are ripe for review.

### BACKGROUND

  TGM is in the business of inspecting, servicing, and repairing turbine generators, with its principal place of business is in Cape Coral, Florida.  (Doc. #2 at ¶¶ 2, 5; Doc. #6

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

at 9).  Flambeau is a Wisconsin limited liability company that produces paper products. (Doc. #2 at ¶¶ 3, 6; Doc. #6 at 9).

In 2014, a steam turbine generator at Flambeau's paper mill in Park Falls, Wisconsin required maintenance.  (Doc. #6 at 10).  In an effort to secure Flambeau's business, TGM inspected the generator and submitted a proposal with prescribed solutions and a price for its work.  (Doc. #6 at 10).  Flambeau countered with certain revisions.  (Doc. #6 at 10; Doc. #2 at ¶ 9).  TGM then submitted a revised proposal,[2] dated September 18, 2014, that incorporated Flambeau's revisions.  (Doc. #2 at ¶ 9; Doc. #2-1 at 3).  This revised proposal included a Service Agreement that described the terms and conditions for TGM's work at Flambeau's mill.  (Doc. #2-1 at 7, 31-37).  It also contained the following dispute resolution provision:

> any dispute, controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof, will be subject to binding arbitration in accordance with this Section.  If the parties fail to resolve any dispute within 30 days of when the dispute arose, either party may require the matter be settled under the Commercial Rules of the American Arbitration Association then in effect, to be held exclusively in Florida, U.S.A., in the English language by a single arbitrator with experience in commercial arbitration, who shall apply the laws of Florida.  The arbitrator shall have no authority to award punitive damages.  Costs of arbitration shall be borne equally by the parties.  Purchaser agrees to be bound by any such arbitral award, which shall be final and enforceable in any court of competent jurisdiction. Each of the parties irrevocably submits to the exclusive jurisdiction of any court of the State of Florida or the United States District Court of the Southern District of Florida over any action, suit or proceeding relating to or arising out of this Agreement and the transactions contemplated hereby, including for purposes of interpreting or enforcing the arbitration provision above.  Each party hereby irrevocably waives any objections, including, without limitation, any objection to the laying of venue or based on the grounds of forum *non conveniens* which such party may now or hereafter have to the bringing of any arbitration or any proceeding in any such court.

---

[2]  The revised proposal was titled, "Unit #1 – 5.7 General Electric Steam Turbine Generator – Major Inspection – TGM Proposal No. WI18429 R2."  (Doc. #2-1 at 1, 3).

(Doc. #2-1 at 36-37).  In addition, TGM's revised proposal instructed Flambeau that

> [a] signed purchase order, or a letter of intent, from your company will be required prior to TGM's mobilization and performance of the work.  The purchase order will need to reference this proposal number and the signed services agreement.  Upon receipt of the signed purchase order, or letter of intent, a TGM Officer will sign the document and a copy will be returned to you for your records.

(Doc. #2-1 at 7).  TGM commenced work on October 24, 2014, finishing four months later.

(Doc. #2 at ¶¶ 14-15).[3]  As of July 17, 2015, Flambeau had paid TGM $336,512.00.  TGM

alleges that Flambeau still owes $684,866.10, including late fees and interest.  (Doc. #2

at ¶¶ 16-17; Doc. #2-1 at 61).

On July 17, 2015, TGM initiated this action against Flambeau in the Circuit Court

of the Twentieth Judicial Circuit in and for Lee County, Florida, alleging breach of contract

and several related claims.  (Doc. #2).  Flambeau timely removed the case to this Court

based on diversity jurisdiction.  (Doc. #1).  On August 17, 2015, Flambeau filed an Answer

that included affirmative defenses for lack of personal jurisdiction and improper venue.

(Doc. #6).  In the alternative to those defenses, Flambeau asserted four counterclaims –

fraud in the inducement, breach of contract, breach of the covenant of good faith and fair

dealing, and unjust enrichment.  (Doc. #6).

Flambeau's countersuit offers an entirely different narrative on the parties'

relationship.  According to Flambeau, TGM botched its initial inspection of the turbine

generator and provided substandard work.  Among other things, Flambeau alleges that

TGM never inspected the generator's vibration monitoring system and discovered a last

minute problem with it.  (Doc. #6 at 11-12).  At that point, TGM allegedly pressured

---

[3] TGM attached to the Complaint three purchase orders dated October 3, 2014, November 20, 2014, and December 18, 2014.  (Doc. #2-1 at 55-57).  In addition, TGM attached three "Contract Change Orders" that the parties' representatives executed on December 17, 2014.  (Doc. #2-1 at 58-60).

Flambeau to pay for a new vibration detection system because TGM would not otherwise guaranty its work.  (Doc. #6 at 11).  TGM installed the new system, causing a two-month delay in the turbine's start-up.  (Doc. #6 at 11-12).  Flambeau alleges that TGM's acts and omissions led to unexpected delays and losses – hence, the counterclaims.  (Doc. #6 at 12-15).

This background would be incomplete without mention of Flambeau's parallel action against TGM in the United States District Court for the Western District of Wisconsin ("Wisconsin Action").[4]  On August 14, 2015, three days before filing the Answer in this case, Flambeau initiated an action in the Circuit Court for Price County, Wisconsin and asserted identical claims to the counterclaims in this case.  TGM then removed the Wisconsin Action to federal court and simultaneously moved to transfer that case to this Court.  (Doc. #24).  That motion is pending.

## DISCUSSION

It is a fundamental legal principle that before a federal district court may hear a case, three prerequisites must be satisfied: (1) jurisdiction over the persons or things; (2) subject matter jurisdiction; and (3) venue.  Thus, before the Court can consider TGM's motion to strike the affirmative defenses and motion to dismiss the counterclaims, it must first decide these threshold matters.  *See Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011) (regarding personal jurisdiction, "[a] court must dismiss an action against a defendant over which it has no personal jurisdiction").  Flambeau's decision to assert lack of personal jurisdiction and improper venue as affirmative defenses rather than move to dismiss the Complaint under Rule 12

---

[4] The Wisconsin Action is styled as *Flambeau Rivers Paper, LLC v. Turbine Generator Maintenance, Inc.*, No. 3:15-cv-594 (W.D. Wis. Aug. 14, 2015).

of the Federal Rules of Civil Procedure on those grounds greatly frustrates the Court's ability to make these threshold determinations.  Flambeau's tactic has prompted TGM to file the instant motions, which means that personal jurisdiction and venue come before the Court through a backdoor and must be assessed through the lens of a motion to strike.  This procedural quandary is important because if the Court denies TGM's motions, that will mean only that Flambeau's affirmative defenses and counterclaims survive the pleading stage and are alive for litigation.  That is not the result Flambeau appears to desire.  The relief Flambeau seeks – but does not definitively move for – is the Court to dismiss this case so the contract dispute may be litigated in the Wisconsin Action.

Upon review of the case file, the Court sees that the parties have scattered arguments for and against personal jurisdiction and venue throughout their filings.  However, it is not the Court's function to scrutinize their papers in order to piece together their positions on these critical issues.  Accordingly, in order to concentrate on the threshold issues, clarify the record, and focus the parties, the Court *sua sponte* raises the question of personal jurisdiction and venue.  To that end, the Court directs the parties to brief the personal jurisdiction and venue issues so that it can decide these matters outright and on the merits.

In drafting said briefs, the parties should keep in mind that the personal jurisdiction and venue issues appear to hinge on their underlying contract dispute.  It is uncontested that Flambeau hired TGM to service the turbine generator at its Wisconsin paper mill and that the parties' relationship was contractual.  But the particular contract that governs their relationship has the parties polarized.  TGM's case relies on the Service Agreement that was submitted with its revised proposal to Flambeau.  (Doc. #2-1 at 31-37).  Flambeau

argues, however, that it never accepted the Service Agreement and that another written contract, which does not contain the Service Agreement, governs their relationship. (Doc. #28 at 2). This leads to yet another matter that the parties should consider when preparing their briefs – if the Court finds that the Service Agreement controls, why is the contract dispute not being arbitrated and why is this case not before the United States District Court for the Southern District of Florida?

Finally, because the personal jurisdiction matter bears directly on TGM's pending motions, the Court will deny them without prejudice and permit TGM to refile such motions, if necessary, after the jurisdiction and venue issues have been resolved.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff Turbine Generator Maintenance, Inc. shall **SHOW CAUSE**, in writing, why (1) this Court has personal jurisdiction over Defendant Flambeau River Papers, LLC, and (2) venue is proper in the United States District Court for the Middle District of Florida on or before **December 3, 2015**. Defendant shall file a response within **fourteen (14) days** of service of Plaintiff's memorandum. Upon reviewing the parties' memoranda, the Court may hold a hearing at which time the parties shall be fully prepared to discuss the personal jurisdiction and venue issues. If the Court deems a hearing necessary, it will advise the parties accordingly as to the date and time.

(2) Plaintiff Turbine Generator Maintenance, Inc.'s Motion to Strike Affirmative Defenses or, Alternatively, for More Definitive Statement (Doc. #17) is **DENIED without prejudice**.

(3) Plaintiff Turbine Generator Maintenance, Inc.'s Motion to Dismiss Counterclaims and to Strike, or in the Alternative, for a More Definitive Statement (Doc. #18) is **DENIED without prejudice**.

**DONE** and **ORDERED** in Fort Myers, Florida this 19th day of November 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record